


**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
2009 NE Alberta St., Ste. 207
Portland, OR 97211
(503) 525-0193
lacy@onda.org

**David H. Becker (OSB # 081507)**
Law Office of David H. Becker, LLC
24242 S. Engstrom Rd.
Colton, OR 97017
(503) 388-9160
davebeckerlaw@gmail.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

**OREGON NATURAL DESERT ASS'N**, *et al.*

Plaintiffs,

v.

**BARRY BUSHUE**, State Director, BLM Oregon/Washington, *et al.*,

Defendants,

and

**CAHILL RANCHES, INC.**, an Oregon corporation,

Defendant-Intervenor.

No. 3:19-cv-01550-SI

**RESPONSE TO MOTIONS TO INTERVENE OF MACKENZIE RANCH ET AL. AND TREE TOP RANCHES**

**INTRODUCTION**

Plaintiffs, the Oregon Natural Desert Association, Audubon Society of Portland, and Defenders of Wildlife (collectively "ONDA") hereby respond to the motions to intervene filed by Mackenzie Ranch LLC *et al.* ("Mackenzie") (ECF No. 80) and Tree Top Ranches, Limited Partnership ("Tree Top") (ECF No. 95). Both Mackenzie and Tree Top seek to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) or, alternatively, to intervene by permission pursuant Rule 24(b). Like the existing defendant-intervenor, Cahill Ranches, Inc. ("Cahill Ranches"), Mackenzie and Tree Top are private grazing operations that hold federally-issued permits to graze their livestock on public lands allotments that contain Key RNAs designated for closure to grazing by the Bureau of Land Management in its 2015 conservation plan for greater sage-grouse.

Intervention as of right is not appropriate. The next phase of the case—cross motions for partial summary judgment concerning ONDA's claim that the Bureau has unlawfully withheld the RNA closures—is limited to a discrete legal issue on which the Bureau and permittees are aligned. Existing party Cahill Ranches, in particular, will adequately represent Mackenzie's and Tree Top's identical interest on the merits. ONDA does not, however, oppose permissive intervention for the new intervenors so long as the Court places reasonable conditions on the grazing permittees' participation to limit duplicative and redundant briefing and argument by the livestock grazing industry. The Court should require that: (1) counsel for all three permittee groups (Cahill, Mackenzie, and Tree Top) confer and avoid duplicative arguments in their brief(s); (2) the three permittee groups are limited either to single, combined 35-page briefs or to 35 total pages to be allocated as they wish; and (3) ONDA is allowed an equivalent number of

additional pages over its 35-page limits, should the Court decide to allow the permittees more than 35 pages total for their briefs.

## LEGAL STANDARD

For intervention as of right, under Rule 24(a),

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Ninth Circuit applies a four-part test to evaluate motions to intervene: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks and citation omitted).

Under Rule 24(b), this Court may grant permissive intervention for anyone who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). An applicant must demonstrate three requirements for permissive intervention: (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the applicant's claim or defense and the main action. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). In exercising its discretion to permit intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

### I. MACKENZIE AND TREE TOP ARE NOT ENTITLED TO INTERVENTION AS OF RIGHT.

ONDA does not contest the first three factors for intervention as of right under Rule 24(a). Mackenzie and Tree Top have not, however, shown that their interests are not adequately represented by existing parties. Because "[f]ailure to satisfy any one of the requirements is fatal," courts "need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). A proposed intervenor is adequately represented if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Sw. Ctr. for Biol. Diversity v. Babbitt*, 150 F.3d 1152, 1153–54 (9th Cir. 1998).

In the Ninth Circuit, the "most important factor to determine whether a proposed intervenor is adequately represented by a present party to the action is how the [intervenor's] interest compares with the interests of existing parties." *Perry*, 587 F.3d at 950–51(quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). A presumption of adequacy of representation is applied when an existing party shares the same "ultimate objective" as an intervenor and can only be rebutted "with a compelling showing to the contrary." *Id.* at 951 (9th Cir. 2012) (internal quotation marks omitted) (quoting *League of United Latin Am. Citizens v. Wilson*, 141 F.3d 1297, 1302 (9th Cir. 1997)). Where an applicant for intervention seeks the same outcome as the presumptive representative party, a compelling showing of inadequacy cannot be met through "the mere fact that there is a slight difference in interests." *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967).

The existing intervenor—grazing permittee Cahill Ranches—will adequately represent the Mackenzie and Tree Top permittees' identical interest and ultimate objective in keeping the Key RNAs open to grazing. Cahill Ranches has resisted the RNA closures since 2014 and has filed two lawsuits and one intervention (in this case) challenging the closures. *Cahill Ranches, Inc. v. Bureau of Land Mgmt*., No. 1:21-cv-1363-CL (D. Or. filed Sept. 16, 2021); *Cahill Ranches, Inc. v. Bureau of Land Mgmt*., No. 1:17-cv-960-CL (D. Or. filed June 19, 2017); *see also* OR_PUB_1384 (2014 and 2015 letters from Cahill Ranches to the Bureau objecting to the closures). There are no similar letters or administrative protests in the administrative record from any of the permittees in the Mackenzie or Tree Top groups. None of the Mackenzie or Tree Top permittees challenged the 2015 ARMPA, and the statute of limitations for them to do so has expired. The record therefore makes clear that Cahill Ranches has shown it is capable of and willing to make arguments from the perspective of grazing permit holders—and likely more vigorously than either of the Mackenzie or Tree Top groups—as to the legality of the Bureau's actions.

ONDA expects that Cahill Ranches and its legal team will make a robust case in favor of continued livestock operations within the Key RNAs. That the new applicants graze different allotments than Cahill Ranches is not pertinent to the *legal* question of whether the Court should hold that the Bureau has unlawfully withheld the closures of the Key RNAs ordered by the 2015 ARMPA. Like Cahill Ranches, the Mackenzie and Tree Top groups all hold Bureau-issued permits to graze private livestock on public lands subject to the requirements of the 2015 ARMPA. *Compare* ECF Nos. 81, 82, 83, 84, 86, 87 (Mackenzie group permits, attached to declarations) *and* ECF No. 96 at 23 (Tree Top permit) *with* ECF No. 76-1 (Cahill Ranches

permit).[1] The only way in which Mackenzie and Tree Top describe that their interests are different from Cahill's is that their on-the-ground operations are different. *See* Mackenzie Motion at 17 (asserting that Cahill Ranches cannot adequately represent them because "each pasture, each RNA, and each ranch that depends on those resources is unique"); Tree Top Motion at 18 (asserting that the Bureau will not adequately represent its interests, but saying nothing about Cahill Ranches). But that has nothing to do with the legal issue as to whether the Bureau has unlawfully withheld the Key RNA closures.

At the March 28, 2022 oral argument, the Court suggested that the parties proceed to the merits and forego further proceedings on preliminary injunctive relief, proposing that the Bureau and intervenors move for partial summary judgment as to ONDA's fourth claim for relief and that ONDA then cross-move on that claim. ONDA agrees with this approach.[2] As the Court observed, there will be no disputed material facts in the upcoming cross motions for partial summary judgment: the sole issue before the Court will be whether the Bureau's withholding of implementation of the closures of the 13 Key RNAs to livestock grazing ordered by the 2015 ARMPA violates the Federal Land Policy and Management Act and Administrative Procedure Act and other applicable law. 43 U.S.C. § 1732(a) (Bureau shall manage the public lands "in accordance with" land use plan requirements); 5 U.S.C. § 706(1) (courts "shall . . . compel" such "agency action unlawfully withheld"). Because Mackenzie's and Tree Top's positions on that discrete legal issue are identical to Cahill's position, the new permittee groups are adequately

---

[1] Of the Mackenzie group, permittee Cow Creek Ranch does not provide a permit, only a copy of an annual grazing application from 2021. ECF No. 85 at 6.

[2] The parties are currently conferring and hope shortly to file a joint scheduling motion that will provide for withdrawal of ONDA's preliminary injunction motion (ECF No. 57) and filing and briefing of cross motions for partial summary judgment as to ONDA's fourth claim.

represented and, therefore, not entitled to intervention as of right. *Sw. Ctr. for Biol. Diversity*, 150 F.3d at 1153–54.

## II. IF THE COURT ALLOWS PERMISSIVE INTERVENTION, IT SHOULD PLACE LIMITATIONS ON THE PERMITTEES' PARTICIPATION.

In considering whether a permissive intervention would unduly delay or prejudice the rights of existing parties, *see* Fed. R. Civ. P. 24(b)(3), courts review the potential burden on plaintiffs from duplicative briefing, including whether adding additional parties would lead to "redundant arguments" and in a "'piling on' effect," all to prejudice of plaintiffs. *Shoshone-Bannock Tribes of Fort Hall Rsrv. v. U.S. Dep't of Interior*, No. CV 10-04-E-BLW, 2010 WL 3173108, *1 (D. Idaho Aug. 10, 2010) (internal quotation marks omitted)). Courts also evaluate whether the existing parties "have every incentive to raise all arguments in favor" of the position adverse to plaintiffs. *Id*. (citing *Perry*, 587 F.3d at 955).

In this case, the Bureau and grazing permittee Cahill Ranches are aligned against ONDA and have every incentive to raise all arguments against ONDA's position—meaning that ONDA already must respond to two separate briefs and double the number of pages to which the federal defendants alone would be entitled. Additional briefing from other grazing operations, represented by two more teams of industry lawyers, would almost certainly be duplicative of the briefing that will be filed by the Bureau and existing party permittee. Whether duplicative or not, it would undoubtedly result in a "piling on" to the detriment and prejudice of ONDA. This would also likely string out the briefing schedule because ONDA would need more time to review and respond to four different sets of briefs.

Courts have wide discretion to deny permissive intervention in consideration of other factors such as "the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented." *Perry*, 587 F.3d at 955 (quoting *Spangler v. Pasadena City*

*Bd. of Educ*., 552 F.2d 1326, 1329 (9th Cir. 1977)). These factors weigh against permissive intervention for the Mackenzie and Tree Top permittee groups because the nature and extent of their grazing interests are identical with existing intervenor Cahill Ranches, and there is no indication that Cahill Ranches and the Bureau will not adequately address the legality of the agency's unlawful withholding of the Key RNA closures.

If the Court decides to allow Mackenzie and Tree Top to intervene permissively, it should limit the permittee groups' participation. Limiting intervention for reasons of judicial efficiency is "a firmly established principle" in the federal courts. *Beauregard, Inc. v. Sword Servs*., LLC, 107 F.3d 351, 352–53 (5th Cir. 1997); *see Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378, 383 n.2 (1987) (limitations on intervention do not constitute a denial of any right to participate, and even "[a]n intervention of right under the amended Rule 24(a) may be subject to appropriate conditions or restrictions responsive among other things to the requirement of efficient conduct of proceedings."); *San Juan Cnty. v. United States*, 503 F.3d 1163, 1189 (10th Cir. 2007) (Rule 24 permits "limitations on the scope of intervention"); *Southern v. Plumb Tools*, 696 F.2d 1321, 1323 (11th Cir. 1983) ("It appears, therefore, that imposing certain conditions on either type of intervention, of right or permissive, poses no problem in the federal courts.").

Moreover, "[a] district court's discretion to grant or deny permissive intervention is broad, and includes the discretion to limit intervention to particular issues or for limited purposes." *Ctr. for Biol. Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1130 (N.D. Cal. 2007) (citing *San Jose Mercury News v. U.S. Dist. Ct.—N. Dist*., 187 F.3d 1096, 1100 (9th Cir. 1999) and *Van Hoomissen v. Xerox Corp*., 497 F.2d 180, 181 (9th Cir. 1974)). "When granting an application for permissive intervention, a federal district court is able to impose almost any

condition." *Columbia-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992), *cert. denied*, 507 U.S. 1000 (1993).

Here, if the Court decides to allow Mackenzie and Tree Top to permissively intervene, it should require for the upcoming merits phase on cross motions for partial summary judgment that: (1) counsel for all three permittee groups shall confer and avoid duplicative arguments in their respective briefs; (2) the three permittee groups are limited to either single, combined 35-page briefs or 35 total pages to be allocated across three briefs as they wish; and (3) ONDA will be allowed an equivalent number of additional pages over its 35-page limits, should the Court decide to allow the permittees more than 35 pages total for their briefs. ONDA also is open to staggered briefing in which the permittees file their combined or page-limited briefing a week after the Bureau's briefs, to avoid duplicative argument—though is mindful of avoiding unnecessary delay in the case management schedule.

Should ONDA prevail on the merits and the Court require additional briefing on remedy, the Court could, of course, allow the permittee groups an opportunity to raise any arguments unique to their operations, as appropriate. However, ONDA reiterates its position that the appropriate remedy for the Bureau's unlawful withholding of a closure decision that promised no grazing after 2020 is no grazing in 2023—which is consistent with the arguments that the Bureau has made that ONDA will not be harmed if the closures are delayed by only one more year. *See* 5 U.S.C. § 706(1) (courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed"); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) (action can be compelled "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*"). No permittee should claim to have been taken by surprise should the Key RNAs finally be unavailable to grazing next year.

## CONCLUSION

For these reasons, the Court should deny in part, and grant in part, the Mackenzie and Tree Top motions to intervene, allowing permissive intervention and imposing the reasonable limits on participation outlined above.

Respectfully submitted this 11th day of April, 2022.

s/ Peter M. Lacy

Peter M. Lacy
Oregon Natural Desert Association

Of Attorneys for Plaintiffs