IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **OREGON NAUTRAL DESERT ASS'N, AUDUBON SOCIETY OF PORTLAND, and DEFENDERS OF WILDLIFE**,<br><br>Plaintiffs,<br><br>v.<br><br>**BARRY BUSHUE, State Director of BLM Oregon/Washington, and BUREAU OF LAND MANAGEMENT, an agency of the United States Department of Interior**,<br><br>Defendants,<br><br>and<br><br>**CAHILL RANCHES INC., an Oregon Corporation**<br><br>Defendant-Intervenor. | Case No. 3:19-cv-1550-SI<br><br>**OPINION AND ORDER** |

Peter Macnamara Lacy, OREGON NATURAL DESERT ASSOCIATION, 2009 NE Alberta Street, Suite 207, Portland, OR 97211; and David H. Becker, LAW OFFICE OF DAVID H. BECKER, LLC, 24242 S Engstrom Road, Colton, OR 97017. Of Attorneys for Plaintiffs.

Barclay T. Samford, Arwyn Carroll, and Luther Langdon Hajek, U.S. DEPARTMENT OF JUSTICE, ENVIRONMENT & NATURAL RESOURCES DIVISION, 1961 Stout Street, 8th Floor, Denver, CO 80294. Of Attorneys for Defendants Barry Bushue and Bureau of Land Management.

Caroline Lobdell and Tate F. Justesen, WESTERN RESOURCES LEGAL CENTER, 9220 SW Barbur Blvd., Suite 327, Portland, OR 97219. Of Attorneys for Defendant-Intervenor Cahill Ranches Inc.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

In this lawsuit, Plaintiffs Oregon Natural Desert Association, Audubon Society of Portland, and Defenders of Wildlife bring claims under the National Environmental Policy Act, Federal Land Policy and Management Act, Federal Vacancies Reform Act, Administrative Procedures Act, and U.S. Constitution against state and federal officials and the Bureau of Land Management (BLM) for their alleged failure timely to close key Research Natural Areas (RNAs) to grazing to facilitate research of sage grouse populations. In December 2019, the Court granted Defendant-Intervenor Cahill Ranches' (Cahill) unopposed motion to intervene of right. ECF 12. Now before the Court are motions to intervene filed by Mackenzie Ranch, Laird Ranch, Cow Creek Ranch, Burgess Angus Ranch, Rocking Club Cattle, V Box Land & Livestock, Mark Mackenzie LLC, and Tree Top Ranches (collectively, Proposed Intervenors). Like Cahill, Proposed Intervenors hold grazing permits on pastures containing key Research Natural Areas (RNAs). Proposed Intervenors contend that they may intervene as of right or, alternatively, should be allowed permissive intervention, because resolution of Plaintiffs' claims may affect their grazing rights. For the reasons explained below, the Court grants Proposed Intervenors' motions.

## STANDARDS

**A. Intervention of Right**

To intervene as of right under Rule 24(a)(2), an applicant must meet four requirements:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

PAGE 2 – OPINION AND ORDER

*United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). Alternatively, Rule 24(a)(1) provides that a court must permit intervention of right to anyone who "is given an unconditional right to intervene by a federal statute."

If a party seeking to intervene fails to meet any of these requirements, it cannot intervene as a matter of right. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). In evaluating whether these requirements are met, courts "are guided primarily by practical and equitable considerations" and generally construe the intervention rule "broadly in favor of proposed intervenors." *City of Los Angeles*, 288 F.3d at 397. "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

In determining whether existing parties can adequately represent the interests of proposed intervenors, the Court considers:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086. "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Id.* "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Id.*

PAGE 3 – OPINION AND ORDER

B.  **Permissive Intervention**

Applicants for permissive intervention under Rule 24(b) must meet three threshold requirements: "(1) an independent ground for jurisdiction; (2) a timely motion; (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). Even if an applicant satisfies the threshold requirements, a court still has discretion to deny permissive intervention. *Donnelly*, 159 F.3d at 412. In exercising this discretion, a court "must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*.

## DISCUSSION

Plaintiffs do not dispute that Proposed Intervenors meet the first three requirements of Rule 24(a)(2). Plaintiffs argue only that Proposed Intervenors are not entitled to intervention of right because they do not meet the fourth requirement—that is, they cannot show that existing parties fail to represent their interests.

Proposed Intervenors do not share the same ultimate objective with existing parties. BLM primarily seeks to defend its actions related to the implementation of the 2015 Approved Resource Management Plan Amendment (ARMPA). Cahill seeks to protect its interest in grazing on the Sucker Creek Pasture. Proposed Intervenors, on the other hand, seek to protect their respective interests in grazing on other pastures containing key RNAs. Although these interests are similar, they are not "essentially identical." *Arakaki*, 587 F.3d at 952; *cf. League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) (finding that the proposed intervenor—a public interest group—shared the same ultimate objective as the existing parties—a state governor and attorney general—because they all sought to uphold the challenged law); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) (finding that the proposed intervenor—a public interest group—shared the same ultimate objective as an existing party—

PAGE 4 – OPINION AND ORDER

secretaries of federal agencies—because they all sought to uphold the same interpretation of a statute). Thus, Proposed Intervenors' burden to show inadequacy of representation is "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

Proposed Intervenors contend that BLM and Cahill will not adequately represent their interests because the resolution of Plaintiffs' claims depends on facts specific to each pasture containing a key RNA. For example, Proposed Intervenors argue that Plaintiffs' request for injunctive relief puts Proposed Intervenors' interests in continued grazing at risk. Without intervention, Proposed Intervenors argue, the Court may grant preliminary or permanent injunctive relief that accommodates BLM and Cahill's interests but harms Proposed Intervenors' grazing interests. Proposed Intervenors argue that BLM and Cahill will not make all arguments related to Proposed Intervenors' private interests because BLM's interest is in defending the legality of its actions and Cahill's interest is in keeping Sucker Creek Pasture open to grazing without regard to other permit-holders or other pastures.

Cahill also represents that it cannot make all the arguments necessary to protect Proposed Intervenors' grazing rights. For example, if the Court were to consider the balance of the equities in issuing a permanent injunction, Cahill contends that it cannot represent the private interests of other permit-holders, including Proposed Intervenors. Some of those interests may depend on the facts relevant to each pasture, such as whether fencing or other means of sectioning off the key RNAs is feasible or whether closing off the key RNAs will impact Proposed Intervenors' economic interests.

Plaintiffs respond that these site-specific facts are not relevant to the resolution of Plaintiffs' fourth claim, which the parties will soon brief on cross-motions for summary judgment. *See* ECF 116. The Court, however, must determine the adequacy of representation of existing parties throughout all stages of litigation considering all remaining claims for relief. *See Berg*, 268 F.3d at 823 ("In assessing the adequacy of representation, the focus should be on the 'subject of the action,' not just the particular issues before the court at the time of the motion." (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983))). Although only Plaintiffs' fourth claim will be at issue in the next stage of litigation, Plaintiffs' other claims remain.

Proposed intervenors have satisfied their minimal burden to show that existing parties' representation would be inadequate. The Court agrees that any consideration of the balance of the equities in issuing a permanent injunction, if any, will depend on the private interests unique to each permit-holder for the pastures containing key RNAs. Thus, neither BLM nor Cahill will necessarily adequately represent those private interests of Proposed Intervenors. Further, the parties appear to advance difference arguments on issues relating to liability. Proposed Intervenor Tree Top Ranches will argue that the 2019 ARMPA controls and that Plaintiffs' claims are moot, *see* ECF 95-1, ¶¶ 96-97; ECF 96, ¶¶ 30-32, which existing parties have not raised. *See* ECF 95, at 7; ECF 120, at 3. Tree Top Ranches is also willing to agree to the closure of the Dry Creek Bench RNA so long as it is fenced off from the surrounding pasture. *See* ECF 96, ¶ 38. Existing parties have not indicated a similar willingness to do so. *See* ECF 120, at 4. These distinctions go beyond mere difference in litigation strategy. *See Glickman*, 82 F.3d at 838 (stating that a "minor" disagreement not central to the case is only a "difference in strategy" and not a basis for finding inadequacy of representation).

PAGE 6 – OPINION AND ORDER

Proposed Intervenors have shown that existing parties may not adequately represent Proposed Intervenors' interests and thus are entitled to intervene of right. *See also* Wright & Miller, *Federal Practice and Procedure*, § 1909 ("[T]here is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests and to be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties."). Because the Court finds Proposed Intervenors may intervene as of right, the Court need not resolve Proposed Intervenors' arguments related to permissive intervention.

## CONCLUSION

The Court GRANTS Proposed Intervenors' motions to intervene, ECF 80, 95.

**IT IS SO ORDERED**.

DATED this 19th day of May, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge